Mr. DiMatteo? Yes, Your Honor. Good morning. May it please the Court. The District Court in this case committed two reversible errors. Deciding material fact issues concerning the and ruling that a claim for unjust enrichment is preempted whenever there's a claim for sole inventorship or co-inventorship. Accordingly, this Court should reverse. The Court also thought that the issue was out of time, right? Statute of limitations issue. There was a statute of limitations issue that the judge addressed, but the timing of that was premised on the Court's error in believing that a claim for unjust enrichment is preempted, believing that the only tort was the tort of acquiring a patent improperly. So the issue of timeliness and the issue of preemption are joined at the hip, if you will. Concerning the issue of sole inventorship, there is no dispute about Mr. Duckworth's testimony that Mr. Visali was crucial to the invention, that he drew the first block diagram that had the arrangement of all components and how they were connected. That's important testimony that the judge... The corroborated testimony was that he drew, what, the diodes, the voltage control oscillator, and the mixer. At the very least, he gave the voltage control oscillator and the mixer. But there's more, there's much more to the claimed invention than just that, is there not? Well, there are two-part answers to that, Your Honor. We never got to a claim construction issue on the means limitation that the Patent Office found as patentable. But we do know that the voltage control oscillator and mixer were JCI's own expert agree that the patent was the output of the voltage control oscillator and the mixer. Now, I submit that Duckworth's testimony, he remembered that, but he also remembered that there was a complete block diagram and that it had all the components necessary to perform the operation. So the fact that whether Mr. Duckworth could remember every single component is not critical to the corroboration. What is critical is that he remembered that it was the first complete operating circuit that he drew. Wasn't there also some evidence that Mr. Zeinstra made some drawings on that whiteboard? We know that he drew on the whiteboard. We have no evidence as to what he drew and whether it had any part of that first block diagram. Mr. Duckworth specifically testified he has no memory of Mr. Zeinstra contributing anything to the In the 485 patent, there is, if you look at Claim 1, the last paragraph in the claim talks about a controller for coupling the memory of a trainable transmitter, etc., etc., etc. What evidence is in the record that shows that Mr. Basali was the sole inventor of that component? You have testimony of Mr. Duckworth that Mr. Basali had the first block diagram that would perform both training the universal garage door opener and playing it back. And that controller is a key construction issue on what constitutes a controller in this regard, but that first block diagram does it. But Mr. Imateo, Mr. Basali has to prove by clear and convincing evidence that he and no one else conceived and possessed the full conception of this entire invention. Where is there any evidence of that? There are two parts to that. First, we have to deal with what we're talking about in the invention. Duckworth says some, he put some of the invention on the board. No, Duckworth says he drew the first block diagram of all the components and how they're connected. Yes, some of them are, not all of them, but some of them is his direct quote and testimony. Right. And at that point of the testimony, he's referring to some of the many components that are listed in an entire patent figure. He is not focused at that moment as to what the claimed invention is and what this fight is about. But the means for... years earlier, but they agree that Mr. Basali is not the first one to write on the whiteboard. There's plenty of stuff up there before he steps up. Certainly the litmus test for inventorship is not who steps to the whiteboard first. Well, except that Mr. Basali has to prove he did the whole thing, doesn't he? He has to prove that he was the first inventor of the claimed invention, so that he has to show, and he has to also show corroborative evidence for the first invention. And in this regard, Duckworth says he wrote the first block diagram with all the operating components for a universal garage door opener, which include the two central components, the voltage control oscillator and the mixer. Their own expert agreed that those were the components. And there is additional testimony, not only from Mr. Duckworth, but there's additional evidence to corroborate this. First, none of the other inventors, Van Lente or Sullman, are inventors at all. They didn't contribute at all to the claimed invention. So it's just Mr. Zeinstra and Mr. Basali arguing over sole inventorship. Mr. Zeinstra himself has no memory of how his own invention works. Now, I submit maybe if he was an inventor, and this is a minor invention of little significance, but this is an invention that earned over $2 billion in sales for a company. Not many inventors have that type of invention in their career. And to testify today, repeatedly, that he doesn't even know how his invention works is telling. And a fact finder could say that not only the evidence Mr. Basali has to corroborate that he's the first inventor, but the absence of evidence that JCI can prove that they even conceived it. The tremendous commercial success of this invention kind of cuts both ways. It makes me wonder, why didn't Mr. Basali move much sooner? Why does he wait seven years before he initiates his claim? We're talking about an individual inventor going up against a large corporation. The tremendous success of this invention took place mostly during that six-year period from when he discovered it. And wouldn't he be driven by the success he sees that he thinks is due to his own effort to say so? I'm sorry? Wouldn't he be driven to make his case when he sees that something that he thinks he invented is being implemented so widely? Certainly, Your Honor, he was. And he finally got a law firm to represent him to do this. Again, we're talking about an individual. And the courts don't favor individual plaintiffs. And it's very hard to find representation. But he did file the suit. He did file lawyers with enough confidence to pursue his claim. He had enough of a case, though, that he became a co-inventor. Yes. So he did have a case. He had a very good case. And a big invention. That invention for co-inventorship was proved through the discovery and what was learned in this case. It was because a law firm, and now myself, stepped up to the plate to represent this small inventor against a big company, file the suit, go through endless motion practice, and finally get the discovery they needed to pursue this claim. And finally, against the weight of that evidence, Johnson Control conceded, as it must, that this man, Mr. Visali, was wrongfully kept off this patent. And what we're here today, Your Honors, is not to decide the final answer. Can he? Is he the sole inventor? The question is, is he entitled to a trial on the issue of sole inventorship? And I submit that the testimony of Mr. Duckworth, in the absence of any evidence of conception, Mr. Zeinstra, entitles Mr. Visali that day in court. Turning briefly to the unjust enrichment, the courts committed error in believing that a claim for sole inventorship, I'm going to focus on that one today, preempts any claim for unjust enrichment. And that simply doesn't make sense. If you accept that JCI took this invention from Mr. Visali, it was his invention alone, received the patent, and received a significant amount of money, that's a basic fact pattern for unjust enrichment. And simply having an inventorship claim does not preempt it. Thank you. Thank you, Mr. Pimentel. Mr. Hugut? Good morning, Your Honors. Michael Hugut from Ann Arbor, Michigan, here on behalf of Appa Lee Johnson Controls. I appreciate the court's time and consideration of the matter this morning. I think, Judge Linn, I want to start with the issue you were asking about, which is the scope of the invention. Two points. One is counsel repeatedly said there's no claim construction, there's no claim construction. He never asked for one at any point. He needs the invention here to be limited to the very circuit that he claims his client invented and contributed. If the invention is broader and includes other aspects like the microcontroller you pointed out, or other aspects of the figure, he focuses on the figure 9A, but there's the figure 9B, he never makes any claims as to that. If the invention is broader than just those specific circuits, then his case is over. We're done. We can go home. If the invention is limited to just that specific circuit he talks about, he still doesn't win because he still hasn't established that he was the sole inventor. Chief pointed out some of the evidence, we rely on to support that, but there's additional evidence. Mr. Duckworth was also asked, he was shown a diagram that Mr. Basali later created after defining the patent, in which Mr. Basali relies on and points to here to this court and says, see that's what I invented, here's a recreation of it. Mr. Duckworth was shown that in his deposition, and all he said when he saw that was, well it's typical of the type of diagram he might give us, I can't say with any certainty he generated it. That's not clear and convincing evidence to establish that he was the sole inventor. He's got no corroborating evidence that he was the sole inventor. There's another aspect of Mr. Duckworth's testimony which I think is important as well. He was shown the circuited issue. He was actually shown 9A during his deposition and he said, his answer was, I mean it's typical of the type of diagram that he might give us, I can't say with certainty he generated it. And I think, moving to Mr. Van Lente's point and the Chief's questioning about his, whether there's other cooperating evidence, I think Mr. Van Lente's testimony, which is never dealt with in the reply brief, wasn't dealt with here today in questioning, Mr. Van Lente's testimony is all we needed. He said, Mark, Mr. Zienstra, already had this, he had a block diagram of the things done, how technically he would do it, not a detailed circuit diagram, but a block diagram. And I remember Mark drawing up the block diagram on the whiteboard. It's entirely consistent with Mr. Duckworth's testimony and it's uncontroverted by anyone. So I think that it's impossible for him to stand here and claim with any credibility that he was the sole inventor. I want to turn briefly to the unjust enrichment argument. In our view, well, before I get to that, I apologize, there was one comment made by counsel during his argument where he said the other inventors don't make any claims to the patents, so it's just Mr. Zienstra versus Mr. Basali. That's not true. Mr. Van Lente, coming back to him, when shown the claims during his deposition said, I had involvement in probably pieces of all these. That's at A4500. Mr. DeVry, one of the other inventors he discounts, he was only asked about the specific circuit. So again, it comes back to, they create this strawman, if you will, that the only invention is the circuit, and then they ask, that presumption, and then they ask the inventors, did you contribute to that circuit? Well, the invention is broader than that. So I don't think that it's true to say that he was, there were no other inventors who contributed to this. The unjust enrichment, I'll be brief on that point. The, I think this court's, let me back up. The one case that they rely on is the American cyanamide case, which the chief, I think, who ran the panel and decided, that's the sole authority they rely on. In that case, I think it was very clear. This court found essentially there was an extra element or of his sole inventorship claim. You had the confidential manuscript which was given by the inventors to the defendant, and that was exploited. That claim would have existed independent of the sole inventorship claim. Here, his entire claim is based on becoming a sole inventor. If he doesn't have a sole inventorship claim, he has no unjust enrichment claim. It depends on it. So if you rule against him on the sole inventorship claim, then he's done. So I think for that reason, for the statute of limitations reason, the claim is clearly time barred. And a third argument, which we only briefly addressed in a footnote, in their very first complaint, they acknowledged that Johnson Controls had a shop right. And if Johnson Controls had a shop right, they can't have an unjust enrichment claim. So for all of those reasons, I don't believe that there is any unjust enrichment claim. If the court has any further questions, I'm happy to submit the case on the argument of the briefs and ask for affirmance. Thank you. Thank you, Mr. Hugin. Mr. DiMatteo, you have five minutes. I'll be brief. On the issue of claim construction, that was a request to be made at trial when the stage was set for claim construction. Because this was an inventorship dispute, there's no formal time for making a claim construction argument. The judge's decision was based completely on understanding that the claimed invention was a circuit which varied the system and matched. And Mr. Sanders, their own expert, agreed that those two components were concerning Mr. Van Lennie's testimony. One, the judge down below is correct, you could give it no credit because that was an interested party. And at best, that creates a fact dispute for a trial. This case deserves to be heard. It deserves to be tried. And then perhaps on a second appeal to decide any merits for the other side. Thank you very much. All right. Thank you. That concludes our morning. All rise.